KULUWAIMAKA OKAMURA *v.* MELE KAULANI, W. YIM SAM, YEE KAI YOU, TONG KAU, TRUSTEE FOR TONG CONEY, A MINOR, AND TONG CONEY, A MINOR.

No. 1082.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.
HON. T. B. STUART, JUDGE.

ARGUED JUNE 12, 1918.                    DECIDED JULY 31, 1918.

COKE, C.J., QUARLES, J., AND CIRCUIT JUDGE ASHFORD
IN PLACE OF KEMP, J., ABSENT.

TRIAL—*res adjudicata.*

> Where upon appeal to this court it was held that K. A. K., the grantee named in a certain deed, was K. Jr. and not K. Sr., and upon a trial *de novo* no evidence being introduced contrary to the above facts so found the identity of K. A. K. as K. Jr. became *res adjudicata.*

OPINION OF THE COURT BY COKE, C. J.
(CIRCUIT JUDGE ASHFORD DISSENTING.)

This cause comes here on exceptions from the court below. In that court plaintiff had instituted an action to quiet title to certain lands situated at Kahehuna, now known as Fort street extension, Honolulu. The cause was tried by the court, jury waived, and a decision was thereafter rendered in favor of the defendant and judgment was entered in accordance therewith. The property now claimed by plaintiff is an undivided one-half interest in lot A containing 23,200 square feet, and lot B1 containing 890 square feet, being a part of the property described in the complaint. The case was before us on a former occasion (*Okamura* v. *Kaulani*, 22 Haw. 414) where a his-

tory of the case and the facts appertaining thereto may be found. In that proceeding the lower court gave judgment in favor of the defendant. This judgment was reversed and the cause remanded to the court below for retrial. In its opinion this court used the following language: "The trial court did not find, as it should have done, the time at which the changes in the original draft of the deed from Mailou were made, but held that the burden was on the plaintiff to show that such changes were made prior to the execution of the deed. * * * If the interlineations were made before execution, there is no alteration of the deed made by the grantor, and the title of the property described in the Mailou deed was conveyed to plaintiff's ancestor," and the chief justice in his concurring opinion said: "If the initials 'K. A.' were interlined before execution the title passed by the deed not to Kapiioho senior but to Kapiioho the son."

Upon a trial *de novo* of the cause the court below rendered a decision expressly finding "that the interlineations were made at the time that the deed was executed and before the delivery," the court further saying that "the color of the ink used in the interlineations and used in writing the name of Dimond as a witness and Mailou as grantor is different from the body of the deed. I believe that the interlineations are in the handwriting of Dimond and were made at his suggestion." And thus the trial court found the facts relative to the interlineations in the deed favorably to plaintiff. The trial court, however, held that K. A. Kapiioho, named in the deed from Mailou, was in fact Kapiioho Sr., and not Kapiioho Jr., the deceased husband of plaintiff. This finding was unsupported by any evidence introduced at the last trial of the cause. The evidence shows that the deceased husband of plaintiff, and from whom she claims title to the property as an heir, was known as K. A. Kapiioho, also as Kaiakoili Kapiioho,

also as Ioseve Kaiakoili, and also as Joe Ili. It is also established by the evidence that Kapiioho Sr. was sometimes called Lono Hanele Kapiioho, sometimes L. H. Kapiioho, also Mr. Kapiioho, and at least upon one occasion I. Kapiioho, but at no time did he ever go by the name of K. A. Kapiioho.

. The judge of the circuit court having found that the interlineations in the deed of the initials "K. A." before the name Kapiioho were in fact made at the time of the execution of the deed and prior to the delivery thereof, reduced the case entirely to a question of fact as to the identity of K. A. Kapiioho, the grantee named in the deed, and this court having found upon the evidence adduced at the first trial that K. A. Kapiioho was the son and not the father and no evidence having been introduced at the second trial warranting a contrary finding the question became *res adjudicata*. It is not denied that at least one of the given names of Kapiioho Jr. was Kaiakoili. The plaintiff argues that this name is a corruption of the word Kaiakoalii, which, properly divided, should be Ka Iako Alii, meaning the outrigger of the canoe of an alii or chief, and that the initials of this name might properly be "K.A." But be that as it may there is undisputed evidence in the record that Kapiioho Jr. was known as K. A. Kapiioho and was so recognized by his father, Kapiioho Sr., at least upon one occasion.

The absence of contrary evidence or of evidence that Kapiioho Sr. was ever known as K. A. Kapiioho or that either of the initials was ever used by him compels us to hold that the K. A. Kapiioho, designated in the deed from Mailou, was the husband of the plaintiff herein and that the decision of the court below holding to the contrary was wholly unsupported by any evidence, and that upon the evidence and the former opinion of this court the judgment should have been for plaintiff.

The plaintiff assigns as error numerous alleged arbitrary and prejudicial rulings of the trial judge which we find unnecessary to discuss in view of the foregoing opinion disposing of the cause favorably to plaintiff upon other grounds.

The exceptions are sustained, the decision and judgment of the lower court reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.

*C. F. Peterson* for plaintiff.

*A. Lindsay, Jr.,* for defendants.

DISSENTING OPINION OF CIRCUIT JUDGE ASHFORD.

Being unable to agree with the majority opinion herein, I will express the reasons for my dissent with such brevity as I shall be able.

Primarily, we should keep in view the principle that in a suit to quiet title to land, as in an action of ejectment, the plaintiff must recover, if at all, upon the strength of her own title, and not upon the weakness of that of her opponents. And because, in my opinion, plaintiff has not shown title in herself, she was rightfully decided against by the trial court herein.

I adopt, as constituting the crux of the case presented for our decision, the language which I here quote from the majority opinion:

"The judge of the circuit court having found that the interlineations in the deed of the initials 'K. A.' before the name Kapiioho were in fact made at the time of the execution of the deed and prior to the delivery thereof, reduced the case entirely to a question of fact as to the identity of K. A. Kapiioho, the grantee named in the deed."

But I strongly dissent from the conclusion which immediately follows, viz:

"—and this court having found (22 Haw. 414) upon the evidence adduced at the first trial that K. A. Kapiioho was the son and not the father and no evidence having been introduced at the second trial warranting a contrary finding, the question became *res adjudicata.*"

In my judgment, the language last quoted represents error, both of law and of fact. In the first place it strikes me as being unwarranted in law to hold that the quality or the fact of any point becoming or being *res adjudicata* can, by any logical possibility, depend upon the state of the evidence in a *later* trial. Secondly, the question of the identity of K. A. Kapiioho was not presented to this court by any of the exceptions passed upon in the former appeal (22 Haw. 414), in such manner as to permit this court, upon the consideration of those exceptions, to decide as to the identity of K. A. Kapiioho—certainly not to the extent of depriving the circuit court, upon a re-trial, of the right to inquire and determine such identity. A new trial (*venire de novo*), having been granted upon the former hearing in this court, it then became competent for, and the duty of the circuit court, upon such second trial, to determine *all questions of fact and of law* that were involved in the case. And, that the question of the identity of K. A. Kapiioho was one of such questions of fact involved (at least to the extent of determining whether that name represented the son of the elder Kapiioho, who later married plaintiff, and through whom she claims), appears to me too plain and obvious to call for argument. A concession of this point carries with it a refutation of the position, stated in the majority opinion, that the question of the identity of this individual became thus (as I may express it), retroactively *res adjudicata* through the failure (if there was a failure—which I do not concede), to prove upon the second trial that the son of the elder Kapiioho was not the K. A. Kapiioho referred to in the

deed under discussion. And, to now hold that the question of fact embracing the identity of the son as K. A. Kapiioho is *res adjudicata* by virtue of the former decision of this court, is the equivalent of holding that the circuit court, upon the second trial, was not at liberty to inquire into or to determine the question of such identity. The bare statement of this proposition is sufficient to refute it.

So much for the error of law alleged by me in respect of the latest of the foregoing quotations from the majority opinion. The error of fact which I charge against it lies in the holding that there was no evidence introduced on the second trial which warranted a finding that the son was *not* K. A. Kapiioho.

An attentive reading and comparison of the testimony given on the second trial has convinced me not only that nothing therein could justify a holding that the son in question was at any time during his life known to any of his family or acquaintances as K. A. Kapiioho—but it affirmatively appears from said evidence that he was never so known—and that he did not know, and would not have recognized himself as being the person described as K. A. Kapiioho.

The only witness who attempts to show such identity is the plaintiff—formerly the wife of the son, and even she testifies that he was married to her in 1889—almost eleven years after the execution of the deed in question—under the name of Joseve Kaiakoili, and that his "English name" was Joseph Ili; that up to the time of the execution of the deed in question, the old man had not given those initials to his son, but that, at the time of making the deed, the old man gave those initials to his son, and so the deed was made out that way (Transcript, pp. 59-60) ; that neither the son nor she (then his wife), knew or suspected that the son had any property on Oahu until about twelve years after the execution of the deed, when the

father sent, for execution by the son and his wife, a form of quit-claim deed to the parcel of land involved, for reasons which sufficiently appear in the record and in opinions of members of this court upon the former hearing. Much more to this general effect might be cited from the transcript of evidence upon the second trial, and the evidence of Mr. Lindsay, one of the counsel engaged, and a former judge of said circuit court—should be mentioned, wherein he testifies that during six years following the marriage of the son in question to this plaintiff, the son was subordinate employe to the witness in the plantation store at Naalehu, Kau—where the son was born, lived all his life, and died, and that during those six years, although in almost hourly contact and conversation with the son in his own language—Hawaiian—Mr. Lindsay knew him only by the names of Kaiakoili, and (more intimately) as Joe Ili.

In the face of the record herein I regard it as impossible to find that the son in question was ever known or described, or intended to be described as K. A. Kapiioho. In my judgment, the evidence adduced upon the second trial would not justify a finding that the son was ever known by, or ever adopted the family or surname of Kapiioho. It is true that our statute provides that "all children born in wedlock shall have their father's name as a family name. They shall, besides, have a Christian name suitable to their sex." (R. L. Sec. 3069.) In accordance with this provision it would have been quite appropriate for the son to have been known as Kapiioho, together with such Christian name as might have been bestowed upon him. In his case, the Christian name of Kaiakoili was so bestowed. But I respectfully insist that the family name of Kapiioho was never recognized as belonging to the son. Nor was there anything peculiar or singular in this, for every native or kamaaina resident of Hawaii well knows

the usage prevalent among Hawaiians whereby the name of the father is completely ignored by the sons, and, where there are several such sons, it is by no means unusual for them to adopt separate surnames.   Such examples will occur to the memory of every kamaaina.   The late King Kalakaua was the son of Kapaakea, but, so far from having adopted his father's name, he was known all through his life as David Kalakaua; and his younger brother was known as William Pitt Leleiohoku.   The family of our present Delegate in Congress affords another prominent example.   Although, according to our statutory rule, our Delegate and his brothers should have been known by the family name of Piikoi, yet, it is universally known that they not only did not adopt such family name, but that each of them adopted a different surname, whereby the three sons became known respectively as David Kawananakoa, Edward A. Keliiahonui, and Jonah Kuhio Kalanianaole.

An effort was made to fit the initials K. A. to the son's name of Kaiakoili—a name little used by him—on the theory that this name is a combination of three Hawaiian words—*Ka iako alii*—which mean the outrigger of a chief's canoe.   But reflection upon a few familiar Hawaiian names which, like Kaiakoili, contain the letters K and A, will demonstrate the absurdity of this attempt.   The familiar name of Kealoha—applied indiscriminately to males and females, may be taken as an example.   An experience of nearly thirty-six years among Hawaiians, has never brought to my attention an instance of a person named—for example—Kealoha, adopting the K and one of the A's—or any other combination of letters made up from such name, as a plural set of initials.   Further than this, the instant case is the first example of such an attempt that has come to my knowledge in Hawaii, and it does not impress me—except with its novel absurdity.

To epitomize, therefore, I respectfully and with all deference to the majority of the court, contend:

1. That the award of a new trial of the issues herein (22 Haw. 414), threw open every question of law and fact involved in this action.

2. That the identity of K. A. Kapiioho, the grantee in the deed in question, was one of the facts involved.

3. That in order that plaintiff should prevail, it was essential that she should establish the identity of her former (and now deceased) husband as the K. A. Kapiioho to whom the deed runs.

4. That the evidence amply justified the holding of the trial court, that plaintiff had failed to prove such identity.

Wherefore, in my opinion, the judgment of the trial court was correct (upon whatever combination of reasons it is based), and the exceptions should be dismissed.